| | | |
|---|---|---|
| BILL WHITE AND | § | |
| ANN WITHINGTON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1266-B |
| | § | |
| WELLS FARGO BANK NA, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This is a breach of contract action brought by Plaintiffs Bill White and Ann Withington against Defendant Wells Fargo Bank. Before the Court are Defendant Wells Fargo Bank's Motion for Summary Judgment (doc. 37) and Motion for Leave to File Supplemental Summary Judgment Evidence (doc. 41). Having considered the Motions, the Court finds that the Motion for Summary Judgment should be and hereby is **GRANTED.** The Motion for Leave to File Supplemental Summary Judgment Evidence is **DENIED AS MOOT.**

## I.

## BACKGROUND

Plaintiff Bill White ("White") has owned real property located at 3523 and 3525 Delmar, Dallas, Texas (the "Property") since December, 1986. (Pl.'s Original Pet. ¶ 14.) Defendant Wells Fargo Bank owns and holds the promissory note on the Property in the original amount of $262,000 (the "Note") and the 2006 Deed of Trust (the "Security Instrument") securing the Note. (*Id.*) Plaintiffs refinanced the Property in 2006. (*Id.*) In connection with the refinancing, White and Wells Fargo signed an Escrow Waiver Agreement which provided that Wells Fargo would waive

escrow funds for the payment of insurance and ad valorem real property taxes if certain conditions were met. (*Id.* at ¶ 14.) The Escrow Waiver Agreement was contingent on White making payments in accordance with the Note's terms, promptly paying applicable taxes directly to the Tax Office, and maintaining adequate insurance on the Property. (App. to Def.'s Br. Mot. Summ. J. 50). The relevant provisions of the Escrow Waiver Agreement are as follows:

> "Borrower agrees to promptly pay directly to the appropriate authorities all applicable items referred to above as they become due and owing, in lieu of the placement of funds for such purpose in an Escrow Account with Lender. Borrower's failure to make such payments or failure to make the payments on the obligation evidenced by the Note in a timely manner shall constitute a default under this Agreement and the Note and the Security Instrument. . . .
>
> "Borrower shall furnish evidence satisfactory to Lender of timely payment in full of all applicable items referred to above, on or before thirty...days from the date such charges are first levied or assessed, for so long as the Security Instrument and the Note secured thereby remain in full force or effect. "Satisfactory evidence", as used herein, shall mean cancelled check or written confirmation of payment from the party to whom the obligation is owed. Borrower's failure to furnish evidence of such payments to Lender shall constitute a default under this Agreement and the Note and the Security Instrument. . . .
>
> "In the event of delinquency or default under this Agreement or the Note or the Security Instrument, among any other remedies available to Lender, Lender may at Lender's option terminate this Agreement and require Borrower to establish and maintain an Escrow Account with Lender in the manner provided for in the Security Instrument. . . ."
>
> (App. to Def.'s Br. Mot. Summ. J. 50).

With the Escrow Waiver Agreement in effect, plaintiffs' monthly payment due under the Note was $2,084.59. (App. to Def.'s Mot. Summ. J. 20). The parties do not dispute that White failed to pay the 2007 ad valorem property taxes to the Dallas County Tax Office before January 31, 2008. (Def.'s Br. Mot. Summ. J. 7; Pl.'s Resp. Br. Mot. Summ. J. 2). The parties also do not dispute that Wells Fargo issued a check for the 2007 ad valorem taxes due on the Property in June, 2008. (Def.'s Br. Mot. Summ. J. 8; Pl.'s Resp. Br. Mot. Summ. J. 2). The parties disagree as to whether Wells Fargo prematurely paid the ad valorem taxes. The parties also disagree about whether White

cured any payment delinquency by issuing a check to Wells Fargo in the amount of the 2007 ad valorem taxes on July 20, 2008. (App. to Pl.'s Resp. Mot. Summ. J. Exhibit A). In his Original Petition, White alleges that Wells Fargo breached the Escrow Waiver Agreement by increasing White's monthly payment to establish an escrow account for tax and insurance payments on the Property. (Pl.'s Original Pet. ¶ 14.). White further alleges that the increase in his monthly payment was inappropriate, and that absent the increase plaintiffs would not have defaulted on the Note. (*Id.* at ¶¶ 15-17.).

## II.

## LEGAL STANDARDS

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the non-movant's case. *Id*; *Little,* 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. V. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' ...by 'conclusory allegations,'...by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.*

(quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). The non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr* (200 F.3d 291, 302 (5th Cir. 2000). The court will not make credibility determinations, weigh the evidence, or draw inferences but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255. In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant.

## III.

## BREACH OF CONTRACT

To prevail on a breach of contract claim under Texas law, the plaintiff must show "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir.2003) (citing *Renteria v. Trevino*, 79 S.W.3d 240, 242 (Tex.App.-Houston [14th Dist.] 2002, no pet.)). At the summary judgment stage, Wells Fargo, as the movant, bears the burden of establishing the absence of an essential element of the plaintiff's case. *Elliot-Williams Co., Inc. V. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). If the nonmovant raises a genuine issue of material fact with respect to the element, summary judgment must be denied. *See id.* The court's role in contract interpretation is to effectuate the intent of the parties. *Koch Indus., Inc. V. Sun Co.*, 918 F.2d 1203, 1208 (5th Cir. 1990). Where an unambiguous writing has been entered into between the parties, the court gives effect to the intention of the parties as expressed or as apparent in their writing. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d

515, 518 (Tex. 1968).

Wells Fargo argues it is entitled to summary judgment as a matter of law because plaintiffs "have wholly failed to identify any contract provisions which Wells Fargo allegedly breached." (Def.'s Br. Mot. Summ. J. 3). The Court agrees. White's Complaint contains general allegations that Wells Fargo breached the Escrow Waiver Agreement by increasing White's monthly payment to establish escrow funds for taxes and insurance. (Pl.'s Original Pet. ¶¶14-16.) However, the Escrow Waiver Agreement is expressly conditioned upon White promptly paying taxes to the relevant authority, maintaining adequate insurance on the Property, and providing Wells Fargo with evidence those payments were made. (App. to Def.'s Br. Mot. Summ. J. 50.)

A. *Payment of Taxes*

White does not dispute that Wells Fargo paid the 2007 ad valorem taxes due on the Property. (Pl.'s Resp. Def.'s Mot. Summ. J. 2). Instead, White argues that Wells Fargo prematurely issued delinquency notices beginning after January 31, 2008, and prematurely paid the 2007 ad valorem taxes in June, 2008. (Pl.'s Resp. Def.'s Mot. Summ. J. 3-4). White characterizes payments made by January 31st as "discounted" or "early", and argues he is free to choose between paying the base tax rate before January 31st, or the base rate plus interest at a later date. (Pl.'s Resp. Def.'s Mot. Summ. J. 7) This characterization is flawed as a matter of law. The Texas Property Tax Code states that "taxes are due on receipt of the tax bill[1] and are delinquent if not paid before February 1." TEX. PROP. CODE §31.02 (West 2003). Thus, any payment received after January 31 constitutes a breach of the Escrow Waiver Agreement's prompt payment requirement.

White also argues that he fulfilled his obligations under the Waiver Agreement by

---

[1]The statute requires tax bills to be mailed in October. TEX. PROP. CODE §31.01 (West 2003).

reimbursing Wells Fargo for the 2007 ad valorem taxes. (Pl.'s Br. Resp. Def.'s Mot. Summ. J. 2). Reimbursement is insufficient to satisfy White's obligations under the agreement because the Escrow Waiver explicitly requires taxes to be paid "directly to the appropriate authorities." (App. to Def.'s Br. Mot. Summ. J. 50). The Escrow Waiver agreement is unambiguously intended to relieve Wells Fargo of the burden of paying for White's expenses out of its own pocket and then seeking reimbursement from White. (*See* App. To Def.'s Br. Mot. Summ. J. 50.) Allowing White to reimburse Wells Fargo at a later date deprives Wells Fargo the benefit of its bargain, and provides White the benefit of an escrow waiver without the burden of burden of prompt, direct payment. Wells Fargo's acceptance of White's check in the amount of the ad valorem taxes did not "cure" the default, as White contends. (Pl.'s Br. Resp. Def.'s Mot. Summ. J. 2). Rather, Wells Fargo accepted the check and applied it to an escrow account established for payment of past and future taxes pursuant to the terms of the Security Agreement. (Def.'s Br. Mot. Summ. J. 10). The application of these funds resulted in White's monthly payment decreasing from $3,708.70 to $3,203.95. (*Id.*)

Because White failed to fulfil his obligations under the Escrow Waiver Agreement, his breach of contract claim fails as a matter of law. White cannot establish that he fully performed his obligations under the agreement. Additionally, he cannot establish that Wells Fargo breached the agreement. The Agreement states that "in the event of a delinquency or default under this Agreement...Lender may at Lender's option terminate this Agreement and require Borrower to establish and maintain an Escrow Account with Lender in the manner provided for in the Security Instrument." (App. to Def.'s Br. Mot. Summ. J. 50). Wells Fargo sent White at least two notices requesting proof of payment of taxes before terminating the Escrow Waiver Agreement and collecting escrow funds. (App. to Def.'s Br. Mot. Summ. J. 240). White's failure to pay taxes on the Property per the terms of the agreement constitutes a "delinquency or default" and entitles Wells

Fargo to increase White's monthly payments in order to establish escrow funds for the Property. (App. to Def.'s Br. Mot. Summ. J. 50).

### B. Payment of Insurance

With respect to escrow funds collected for insurance purposes, White again fails to articulate a specific provision of the Loan Documents allegedly breached by Wells Fargo. Wells Fargo terminated the Escrow Waiver Agreement when White was delinquent on tax payments. (App. to Def.'s Br. Mot. Summ. J. 202). Even if, *arguendo*, the Escrow Waiver Agreement had not been terminated, White's breach of contract claim fails as a matter of law because White presents no evidence he fully performed his insurance obligations under the contract. The Escrow Waiver Agreement requires White to maintain hazard insurance on the Property, and to "furnish evidence satisfactory to Lender of timely payment" of premiums. (App. to Def.'s Br. Mot. Summ. J. 50). The Agreement further specifies that "satisfactory evidence" means "cancelled check or written confirmation of payment" from the insurer. (*Id.*) Wells Fargo bargained for this agreement to relieve itself the responsibility of making or tracking down insurance premium payments for White's Property. White presents evidence he purchased insurance policies on the Property, but there is no evidence he made timely premium payments to maintain the policies, or provided evidence of timely payments to Wells Fargo. (*See* App. to Pl.'s Resp. Br. Mot. Summ. J. Exhibit B.). Absent "cancelled check[s] or written confirmation of payment," White fails to raise a genuine issue of material fact as to whether he fully performed under the Escrow Waiver Agreement, and no reasonable jury could find that Wells Fargo breached its agreement by collecting escrow funds to cover hazard insurance.

Finally, White argues that Wells Fargo unilaterally created the default on loan payments by rejecting a series of monthly payment checks sent by White. (Pl.'s Resp. Br. Mot. Summ. J. 3). The rejected checks presented as summary judgment evidence were made out for $2,188 and $2,084.

(App. to Pl.'s Resp. Br. Mot. Summ. J. Exhibit E)   The monthly payment required by Wells Fargo after the proper termination of the Escrow Waiver Agreement was $3,708.70, so the checks written for lesser amounts were properly rejected and White's claims fail as a matter of law.   (Def.'s Br. Mot. Summ. J. 10).

## IV.

## CONCLUSION

The summary judgment evidence,  when taken in the light most favorable to White, indicates White is missing two essential elements of his breach of contract claim.   White cannot establish that he fully performed under the terms of the agreement, and fails to identify any specific provision of the Note, the Security Agreement, or the Escrow Waiver Agreement breached by Wells Fargo.   Because White fails to establish a prima facie case with respect to either the taxes or insurance on the Property, and does not raise a genuine issue of material fact for trial on these elements, Wells Fargo's Motion for Summary Judgment should be and hereby is **GRANTED.**   It is unnecessary for the Court to rule on Defendant's Motion for Leave to File Supplementary Summary Judgment Evidence and the Motion is thus **DENIED AS MOOT.**

**SO ORDERED.**

**SIGNED December 1, 2010**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE